# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**EDWIN NIEVES,**

**Plaintiff,**

**v.**

**Case No. 2:18-cv-10748**

**Magistrate Judge Norah McCann King**

**ANDREW SAUL,**
**Commissioner of Social Security,**

**Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act,

as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Edwin Nieves for

Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et*

*seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that

application. After careful consideration of the entire record, including the entire administrative

record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil

Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the

Commissioner's decision.

## I.    PROCEDURAL HISTORY

On August 29, 2012, Plaintiff filed an application for benefits, alleging that he has been

disabled since January 19, 2011. R. 139–43. The application was denied initially and upon

reconsideration. R. 72–76, 80–81. Plaintiff sought a *de novo* hearing before an administrative

law judge. R. 82–84. Administrative Law Judge Leonard Olarsch ("ALJ") held a hearing on

February 27, 2014, at which Plaintiff, who was represented by counsel, appeared and testified, as

1

did a vocational expert. R. 23−51. In a decision dated April 14, 2014, the ALJ concluded that

Plaintiff was not disabled within the meaning of the Social Security Act since August 29, 2012,

*i.e.*, the date on which the application was filed ("the ALJ's first decision"). R. 13−19, 370−76

(duplicate). That decision became the final decision of the Commissioner of Social Security

when the Appeals Council declined review on August 28, 2015. R. 1−6.

Plaintiff timely filed an appeal from that decision pursuant to 42 U.S.C. § 405(g). R.

386−94 (D. N.J. Case No. 15-cv-7762). On October 31, 2016, after the parties had submitted

moving and responsive briefs, United States District Judge Katharine S. Hayden issued a bench

decision, following the parties' oral arguments, and remanded the matter for further

administrative proceedings. R. 404−43. On November 4, 2016, Judge Hayden's bench decision

was memorialized in a written Order, which found and ordered as follows:

> This matter having come before the Court upon filing of the plaintiff's complaint
> ON October 29, 2015, and the Court having reviewed the pleadings and heard and
> benefited from oral argument on October 31, 2016 (Abraham S. Alter, Esq., for
> plaintiff; Edward C. Tompsett, SAUSA, for defendant) and the Court having found
> the administrative decision of April 14, 2014 to be substantively flawed and
> conclusory, and the Court having explained its ruling and reasons in a Bench
> Decision announced on October 31, 2016; and the Court having requested and
> received agreement on a Remand Order set forth on the record;
>
> IT IS ON THIS 4th DAY OF NOVEMBER, 2016, ORDERED AS FOLLOWS:
>
> 1. This matter is remanded to the Commissioner for reconsideration of the
>    plaintiff's residual functional capacity, such reconsideration to result in specific
>    references to the evidence resulting in findings with respect to plaintiff's
>    exertional capacities to walk, stand, lift, carry and sit.
>
> 2. This matter is remanded for reconsideration of plaintiff's subjective complaints
>    of pain and limitations resulting from acknowledged nerve damage and disc
>    disease in his back.
>
> 3. This matter is remanded for a new hearing and new testimony from a vocational
>    expert since this case has reached the fifth step of the sequential evaluation. The
>    ALJ shall incorporate the Commissioner's understandings as published in SSR

83-10 regarding the requirements of unskilled jobs when questioning the
vocational expert.

R. 449–50 ("the 2016 Court Order").

On September 18, 2017, the Appeals Council vacated the Commissioner's final decision

and remanded the case to an ALJ for "further proceedings consistent with the order of the court."

R. 454.[1] The Appeals Council further directed the ALJ to offer Plaintiff "the opportunity for a

hearing, take any further action needed to complete the administrative record and issue a new

decision." *Id.*

On December 27, 2017, the same ALJ who had conducted the first administrative hearing

held a second administrative hearing at which Plaintiff, who was again represented by counsel,

again appeared and testified, as did a vocational expert. R. 340–66. In a decision dated February

23, 2018, the ALJ concluded that Plaintiff was not disabled at any time since August 29, 2012,

*i.e.,* the date on which Plaintiff's first application was filed ("the ALJ's second decision"). R.

326–34. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On

December 7, 2018, Plaintiff consented to disposition of the matter by a United States Magistrate

Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF

No. 10.[2] On March 12, 2020, the case was reassigned to the undersigned. ECF No. 23. The

matter is now ripe for disposition.

---

[1] The Appeals Council also found that Plaintiff's subsequent SSI claim filed on October 30,
2015, was duplicative in light of the remand of the first-filed claim and directed that the claims
be consolidated and that the ALJ issue a new decision on the consolidated claims. *Id.*

[2] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

## II.     LEGAL STANDARD

### A.     Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

4

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the administrative decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220

5

F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482. Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation

6

omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

### B.     Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §

416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    THE ALJ'S SECOND DECISION AND APPELLATE ISSUES

The Plaintiff was 47 years old on the date on which he filed his application. R. 333.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from August 29, 2012, his alleged disability onset date, through the date of the decision. R. 328.

At step two, the ALJ found that Plaintiff's lumbar spine disorder was a severe impairment. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 328−29.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 329−32. The ALJ also found that Plaintiff had no past

8

relevant work. R. 332.

At step five, the ALJ found that a significant number of jobs—*i.e.*, approximately 20,000 jobs as a sealing machine operator; approximately 60,000 jobs as a microfilm mounter; approximately 30,000 jobs as a weld inspector—existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 333. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act since August 29, 2012, the date on which his application for benefits was filed. R. 334.

Plaintiff disagrees with the ALJ's findings at steps four and five and contends that the ALJ's second decision ignores 2016 Court Order; he asks that the second decision of the Commissioner be reversed and remanded with directions for the granting of benefits beginning August 20, 2015, with the remaining period prior to that date remanded for a new hearing and decision. *Plaintiff's Brief,* ECF No. 21. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 22.

## IV.   DISCUSSION

### A.   Subjective Complaints

Plaintiff challenges the ALJ's evaluation of Plaintiff's subjective complaints, contending that the ALJ failed to comply with the 2016 Court Order or with the applicable regulation and Ruling. *Plaintiff's Brief*, ECF No. 21, pp. 16, 19, 27–32. Plaintiff's arguments are not well taken.

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. §

416.929(a)).  Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)).  Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id*. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id*.; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In this evaluation, an ALJ considers objective medical evidence as well as other evidence relevant to a claimant's symptoms. 20 C.F.R. § 416.929(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms).

Finally, an ALJ is vested with "wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").[3]

Here, the ALJ followed this two-step evaluation process.  The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause symptoms, but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 330. The ALJ specifically considered Plaintiff's hearing testimony regarding back pain that permits him to walk only half a block and stand and sit for only 15 to 20 minutes before he experiences a backache, and his testimony that he is most comfortable lying down, and that his medications reduce his pain but cause drowsiness and difficulty focusing. R. 329–30. The ALJ also detailed years of record evidence with citation to specific records that did not support Plaintiff's allegations of disability, including, *inter alia*, the following evidence:

- An October 2012 MRI of the lumbar spine which revealed disc desiccation indicating degeneration of intervertebral discs at L4-L5 and L5-Sl; a broad-based disc bulge at L4-L5 and L5-S1 with mild lateral recess narrowing at L4-L5 and mild to moderate left lateral recess narrowing at L5-5l contacting the left S1 nerve root; patent neural foramina; paravertebral soft tissues within normal limits; no compression fracture; and displacement disease at LI-L5 and L5-51, R. 330 (citing Exhibit B10F, R. 300–01);

---

[3]SSR 16-3p superseded SSR 96-7p on March 26, 2016, and eliminated the use of the term "credibility."  SSR 16-3p.  However, "while SSR 16-3P clarifies that adjudicators should not make statements about an individual's truthfulness, the overarching task of assessing whether an individual's statements are consistent with other record evidence remains the same." *Levyash v. Colvin*, No. CV 16-2189, 2018 WL 1559769, at *8 (D.N.J. Mar. 30, 2018).

- February 2012 records from St. Joseph's Hospital emergency department relating to complaints of low back pain, which revealed reported mild pain in the low back area, normal range of motion in the back, no vertebral tenderness, and only mild paravertebral tenderness on the lower back and, after Plaintiff had been administered acetaminophen and Toradol, he was discharged home the same day in good condition, *id.* (citing Exhibit B5F, pages 11–13, R. 277–79);

- Records from Paterson Community Health Center from 2012 through 2017 that reflected decreased range of motion in the back with some tenderness and back spasm with the ability to ambulate slowly, and indicating that the back impairment had been treated with conservative, routine care and that, in December 2012, Plaintiff reported that he had experienced some improvement in his back pain from his medications, which included oxycodone, Tramadol, Flexeril, Gabapentin, and Lidoderm patches, *id.* (citing Exhibits B8F, B11F, and B13F, R. 285–98, 302–22, 574–635);

- Assigning "little weight" to the August 27, 2012, opinion of Plaintiff's treating primary care physician, Waldemar E. Silva, M.D., in which Dr. Silva opined that Plaintiff was unable to work due to back pain, on the basis that the opinion is conclusory and does not provide specific vocational limitations and because whether an individual is disabled is reserved to the Commissioner and beyond Dr. Silva's purview, R. 331;

- Assigning "little weight" to Dr. Silva's August 18, 2012, opinion that Plaintiff could not work and had limitations in standing, walking, climbing, stooping, bending, lifting, and use of his hands because Dr. Silva does not provide specific vocational limitations, *id.*;

- The report from state agency physician Ronald Bagner, M.D., who performed a consultative physical examination in February 2016 which revealed that Plaintiff ambulated slowly with moderate difficulty without a cane, was not uncomfortable in the seated position during the interview, had no difficulty getting on and off the examining table, could dress and undress himself without assistance, and was able to walk on his heels and toes and indicating that, while the pain was reported on movement of the lower back, examination revealed normal range of motion in the cervical and lumbar spine, hips, shoulders, knees, ankles, elbows, forearms, wrists, and fingers, no pain on straight leg raising, no motor or sensory abnormality in the lower or upper extremities, 5/5 grip strength bilaterally, and ability to make a fist and  oppose the thumbs, *id.* (citing Exhibit B12F, R. 569–73); and

- The opinions of state agency reviewing physicians who found that Plaintiff could lift or carry up to 10 pounds frequently and 20 pounds occasionally, sit up to 6 hours in an 8 hour day, stand or walk up to 4 hours in an 8 hour day, occasionally climb ramps or stairs, never climb ladders, ropes, or scaffolds, occasionally balance and stoop, frequently kneel, never crouch nor crawl, *id.* (citing Exhibits B1A and B3A, R. 52–59, 61–68).

*See generally*, R. 330-31. The ALJ went on to specifically acknowledge the criteria for assessing Plaintiff's subjective complaints under 20 C.F.R. § 416.929(c), R. 331−32, and explained why the evidence in the record rendered those complaints "less compelling," R. 332:

> The claimant's reported daily activities are greater than one might expect, given his allegations of physical disability. In his Adult Function Report, the claimant stated that he spends 2 to 3 hours a day with his grandsons and watches television for several hours (Exhibit B11E at 2). He helps out around the house and is able to do laundry, dishes, set the table for dinner and clean up after, approximately three times a week with the cleaning (*id.* at 3). He goes out 4 or 5 times a month and travels by walking, riding in a car, or using public transportation (*id.* at 4-5). He shops for food and clothing in stores 2 to 3 times a month (*id.* at 5). He goes out to eat or to the movies with friends and family 2 to 3 times a month and regularly goes to church, the movies, and the store (*id.*). He does not need someone to accompany him (*id.*). In addition, … treatment records dated September 2013 showed that the claimant was able to travel to Puerto Rico for two weeks the prior month (Exhibit B11F at 2).

> As for the claimant's reports of symptoms, the claimant's allegations regarding the location, duration, frequency, and intensity of his pain or other symptoms reported and the alleged effects from his medications are not corroborated by treatment records (Exhibit B8F, B11F, B13F).[4] His alleged need for frequent, prolonged rest breaks is inconsistent with the level of daily functioning that he reported elsewhere in the record.

> The course of treatment does not support the claimant's allegation of disability. As discussed in detail above, the claimant has had only conservative treatment consisting of routine office visits and medication management. The claimant has not required hospitalization for exacerbation of his symptoms. He has not had any surgical intervention. Moreover, the claimant acknowledged at the hearing that his medications reduce his pain.

> For these reasons, the claimant's allegations and testimony are rendered less compelling.

> In sum, the overall record does not support the severity of the claimant's allegations. The clinical and diagnostic evidence related to the claimant's lumbar spine impairment provides support for the residual functional capacity for light

---

[4] The Court notes that these records, which cover Plaintiff's treatment from 2012 through 2017, R. 285−98, 302−22, 574−635, reveal that Plaintiff was in no acute distress upon examination. R. 287, 289, 291, 305, 307, 309, 312. The records also indicate that Plaintiff's pain was controlled by medication and that he was doing well on his current medication. R. 289, 577, 599, 601, 605, 610, 615, 619, 621, 624, 626, 628, 632, 634.

13

> exertion with the additional postural limitations noted above. However, the claimant's own reports of a relatively broad range of daily activities and the lack of more substantial treatment for his allegations of persistent pain and limited mobility establish that no further restrictions are justified.

R. 332. The Court finds no error with the ALJ's analysis in this regard.

Plaintiff, however, contends that this analysis fails to comply with the 2016 Court Order, which required the ALJ to consider Plaintiff's subjective complaints of pain and limitations resulting from "'acknowledged nerve damage and disc disease in his back.'" *Plaintiff's Moving Brief*, ECF No. 21, p. 19 (quoting 2016 Court Order, R. 450). Plaintiff argues that "nothing was fixed and nothing was acknowledged as needing fixing" because the ALJ included in the ALJ's second decision the same paragraph[5] criticized by the District Court in 2016 on the basis that it purported "to establish the RFC and reject the extent of plaintiff's symptomatology all at once." *Id.* (citing R. 332, 374, 436−38 (reflecting the Court's concern during oral argument on October

---

[5] The paragraph in the ALJ's first administrative decision to which Plaintiff refers reads as follows:

> The undersigned has reviewed and analyzed all evidence of record, including medical records, whether or not they have been specifically discussed in the decision. In sum, the above residual functional capacity assessment is supported by the objective medical evidence contained in the record. Treatment notes in the record do not sustain the claimant's allegations of a disabling impairment. The credibility of the claimant's allegations is weakened by inconsistencies between his allegations and the medical evidence of record. The undersigned finds that the claimant experienced some limitations but only to the extent described in the residual functional capacity above.

R. 374. The paragraph in the ALJ's second decision issued in February 2018, to which Plaintiff refers reads as follows:

> In sum, the overall record does not support the severity of the claimant's allegations. The clinical and diagnostic evidence related to the claimant's lumbar spine impairment provides support for the residual functional capacity for light exertion with the additional postural limitations noted above. However, the claimant's own reports of a relatively broad range of daily activities and the lack of more substantial treatment for his allegations of persistent pain and limited mobility establish that no further restrictions are justified.

R. 332.

14

31, 2016, regarding the analysis in the ALJ's first administrative decision)).[6]

Plaintiff's argument is not well taken. The ALJ's reasoning for discounting Plaintiff's subjective complaints was not limited to that single summary paragraph appearing on R. 332. Notably, the ALJ's reasoning in the ALJ's second decision is longer and more detailed than the reasoning in the first administrative decision. *Compare* R. 330–32, *with* R. 373–74. As set forth above, in the ALJ's second decision, the ALJ considered several years' worth of objective medical evidence, with specific citations to the record, which reflect the ALJ's consideration of the relevant factors set out in 20 C.F.R. § 416.929(c) and SSR 16-3p. R. 330–32. This analysis complies with the Court's 2016 Order, R. 450, and sufficiently addresses Judge Hayden's concerns regarding the reasoning in the first administrative decision. R. 436, 438. Moreover, the analysis contained in the ALJ's second decision permits meaningful review by this Court. *See Jones*, 364 F.3d at 505.

Plaintiff nevertheless goes on to argue that the ALJ did not comply with SSR 16-3p and 20 C.F.R. § 416.929(c) because he did not fully consider Plaintiff's medications and the side

---

[6] Plaintiff refers to the following statements by the Court regarding the reasoning from the paragraph in the ALJ's first decision:

> The problem I have is, the same body of evidence with those categories that are in the next to the last paragraph and indicate that what he's saying is exaggerating, that same body of evidence is used in a completely different setting, which is to support that he does have some limitations and then used to support what those limitations are.  It's that aggregate approach to findings of great significance to the outcome of the decision that I believe is the focus of Mr. Alter's point and certainly my point; is this opinion written the way it has to be to support or permit meaningful review.

R. 436.

> Generalizations. The categories of generalizations, that conclusions are generalized categories. And that's really not what I think an ALJ is supposed to do. An ALJ is supposed to say, you know, these specific treatment notes, look at what they say, look at what they recommend and look at what he's complaining about and there's no match-up.

R. 438.

15

effects of that medication. *Plaintiff's Moving Brief*, ECF No. 21, pp. 27–32 (complaining, *inter alia*, that the ALJ refers only once to Plaintiff's medications at R. 330). This Court disagrees. The ALJ specifically considered Plaintiff's testimony that he experienced drowsiness and difficulty focusing as side effects of his medications, which included oxycodone, Tramadol, Flexeril, Gabapentin, and Lidoderm patches. R. 330. However, the ALJ found that Plaintiff's "alleged effects from his medications are not corroborated by treatment records[.]" R. 332 (citing Exhibit B8F, B11F, B13F, R. 285–98, 302–22, 574–635 (reflecting treatment from 2012 through 2017, and which does not reflect that Plaintiff ever complained about side effects from medications, and a July 2016 record, R. 597, which appears to indicate that Plaintiff did not suffer side effects from his medications ("He is taking medication wo se [without side effects].")). Notably, "[d]rowsiness [that] often accompanies the taking of medication, … should not be viewed as disabling unless the record references serious functional limitations." *Burns v. Barnhart*, 312 F.3d 113, 131 (3d Cir. 2002). Although Plaintiff cites to his own hearing testimony, he points to no objective evidence in the record establishing complaints of side effects or any limitations caused by his medications. *See generally Plaintiff's Moving Brief*, ECF No. 21. Accordingly, the ALJ reasonably discounted Plaintiff's alleged side effects from his medications as uncorroborated. *See Grandillo v. Barnhart*, 105 F. App'x 415, 419 (3d Cir. 2004) (holding that where a claimant has "not cited to any medical evidence demonstrating that she suffered adverse side effects from her medication . . . her own conclusory statements [do] not establish a sufficient ongoing struggle with any side-effects to undermine the ALJ's determination"); *Dennis-Orshak v. Berryhill*, No. 3:18-CV-15987, 2020 WL 4364330, at *7 (D.N.J. July 30, 2020) ("However, [the claimant] has failed to provide any evidence of such conditions outside of her own conclusory testimony, which is insufficient to undermine the

ALJ's decision and warrant a reversal and remand.") (citations omitted); *Williams v. Comm'r of Soc. Sec.*, No. CV 18-8769, 2019 WL 2223748, at *2 (D.N.J. May 23, 2019) ("Plaintiff has pointed to no evidence save her own testimony that might establish that medication side effects limit her ability to focus or concentrate. The ALJ therefore did not err in concluding that this subjective complaint (difficulty concentrating due to medication side effects) was not entirely consistent with the medical evidence.").

In short, this Court concludes that the ALJ has sufficiently explained his reasoning in assessing Plaintiff's subjective complaints and that his findings in this regard are supported by substantial evidence in the record. The ALJ's evaluation of Plaintiff's subjective complaints and of this opinion evidence is therefore entitled to this Court's deference. *See* 20 C.F.R. § 416.927(c)(3), (4), (6); *Brunson*, 704 F. App'x at 59–60; *Chandler*, 667 F.3d at 361; *Miller*, 719 F. App'x at 134; SSR 16-3p; *cf. Hock v. Comm'r Soc. Sec. Admin.*, 646 F. App'x 171, 174 (3d Cir. 2016) ("In addition to relying on evidence that Ms. Hock independently performed many activities of daily living, such as running errands outside her house, babysitting, and answering phones at her father's shop, the ALJ relied on the absence of evidence in the record to corroborate the more severe limitations to which Ms. Hock testified."); *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited Claimant's daily activities and objective medical reports").

**B.      RFC**

Plaintiff also argues that the RFC determination in the ALJ's second decision does not comply with the 2016 Court Order and does not take into account his nerve damage or reliance on opioid pain relief. *Plaintiff's Moving Brief*, ECF No. 21, pp. 15–20, 27–32. This Court disagrees.

A claimant's RFC is the most that the claimant can do despite the claimant's limitations. 20 C.F.R. § 416.945(a)(1). At the administrative hearing stage, an ALJ is charged with determining the claimant's RFC. 20 C.F.R. §§ 416.927(e), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, an ALJ has a duty to consider all the evidence. *Plummer*, 186 F.3d at 429. However, the ALJ need include only "credibly established" limitations. *Rutherford*, 399 F.3d at 554; *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to exclude from the RFC "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

Here, the ALJ determined that Plaintiff had the RFC to perform a limited range of light work, as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except lift or carry up to 10 pounds frequently and 20 pounds occasionally; sit up to 6 hours in an 8 hour day; stand or walk up to 4 hours in an 8

18

> hour day. He can perform occasional postural maneuvers except he can frequently kneel and never climb ladders, ropes, or scaffolds, crouch, or crawl. He would be off task 10 percent of the workday and miss one day per month.

R. 329.[7] In making this determination, the ALJ detailed with specific citations to the record the years of record evidence and testimony as noted above, including, *inter alia*, emergency department records from 2012 that reflected mild pain in the low back area, normal range of motion in the back, no vertebral tenderness, and only mild paravertebral tenderness in the lower back that markedly improved once acetaminophen and Toradol were administered; treatment records from 2012 through 2017 that reflected decreased range of motion in the back with some tenderness and back spasm, but that his back impairment was treated with conservative, routine care, that he was able to ambulate without assistance, and that Plaintiff's back pain was controlled with medication and he reported no side effects from this medication; the report from Dr. Bagner's February 2016 consultative examination which indicated that Plaintiff ambulated without a cane, was not uncomfortable in the seated position during the interview, had no difficulty getting on and off the examining table, could dress and undress himself without assistance, and was able to walk on his heels and toes and, although pain was reported on movement of the lower back, there was normal range of motion in the cervical and lumbar spine, hips, shoulders, knees, ankles, elbows, forearms, wrists, and fingers, no pain on straight leg raising, no motor or sensory abnormality in the lower or upper extremities, 5/5 grip strength

---

[7] In the ALJ's first decision, the ALJ determined that Plaintiff had the RFC to perform light work with some additional limitations as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant is limited to standing and walking for 4 hours in an 8 hour day. The claimant can perform occasional postural maneuvers but no climbing ladders, ropes, or scaffolds, crouching or crawling. In addition, the claimant is limited to unskilled work.

R. 15.

bilaterally, and ability to make a fist and oppose the thumbs; the opinions of the state agency reviewing physicians that Plaintiff could lift or carry up to 10 pounds frequently and 20 pounds occasionally, sit up to 6 hours in an 8 hour day, stand or walk up to 4 hours in an 8 hour day, occasionally climb ramps or stairs, never climb ladders, ropes, or scaffolds, occasionally balance and stoop, frequently kneel, never crouch nor crawl; that Plaintiff's daily activities included spending two to three hours a day with his grandsons, watching television for several hours, helping around the house by doing laundry and dishes, setting the table for dinner and cleaning up afterwards; cleaning three times a week; going out four or five times a month without someone accompanying him and traveling by walking, riding in a car, or using public transportation; going out to eat or to the movies with friends and family two to three times a month; regularly attending church; and traveling to Puerto Rico for two weeks in August 2013. R. 329–32. The record unquestionably contains substantial evidence to support this RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

Plaintiff, however, contends that the RFC determination in the ALJ's second decision is "vague" and as defective as that previously rejected by this Court. Plaintiff argues that this RFC finding therefore does not comply with the 2016 Court Order, which required the ALJ to "articulate specific references to which and what evidence supports whatever plaintiff's exertional abilities . . . ultimately found to be[.]" *Plaintiff's Moving Brief*, ECF No. 21, pp. 15–20. Plaintiff's argument is not well taken.

The 2016 Court Order required the ALJ to reconsider the RFC determination,  making "specific references to the evidence resulting in findings with respect to plaintiff's exertional capacities to walk, stand, lift, carry and sit." R. 450. As previously discussed, the ALJ detailed

the record evidence in a narrative discussion throughout several single-spaced pages with specific citations to the record, explicitly considered Plaintiff's functional limitations, and crafted an RFC that reflected those limitations. R. 329−32; *see also Chandler*, 667 F.3d at 361−62 (stating that the ALJ, not physicians, is charged with the ultimate disability and RFC determinations and that an ALJ "is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision"); *Jones v*, 364 F.3d at 505 (stating that an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis[;]" instead, the ALJ's decision must contain "sufficient development of the record and explanation of findings to permit meaningful review"); *Diciano v. Comm'r of Soc. Sec*., No. 1:18-CV-17383, 2019 WL 6696523, at *5 (D.N.J. Dec. 9, 2019) ("The RFC is a function-by-function assessment based on all of the relevant evidence of an individual's ability to do work-related activities, but an ALJ does not need to use particular language or adhere to a particular format in conducting his RFC analysis.") (citations omitted). Notably, the ALJ explicitly considered evidence of Plaintiff's ability to walk on his heels and toes without a cane, R. 331 (citing Exhibit B12F, R. 569−73), and the fact that Plaintiff was not uncomfortable in a seated position throughout his consultative examination and that he had no motor or sensory abnormality in the lower or upper extremities, and 5/5 grip strength bilaterally, *id*.; the ALJ also accorded "[s]ignificant weight" to the state agency reviewing physicians' opinions that Plaintiff was capable of lifting or carrying up to 10 pounds frequently and 20 pounds occasionally, sitting up to 6 hours in an 8 hour day, standing or walking up to 4 hours in an 8 hour day, *id.* (citing Exhibit B1A, R. 52−59, and Exhibit B3A, R. 61−68). Based on this record, this Court concludes that the ALJ complied with the Court's 2016 Order.

Plaintiff goes on to argue that the RFC determination is flawed because it does not incorporate Plaintiff's reliance on opioid pain relief. *Plaintiff's Moving Brief*, ECF No. 21, pp. 29−32. However, as previously discussed, Plaintiff offered nothing other than his own testimony when explaining the side effects of his medication and did not cite to any medical evidence corroborating limitations arising from such side effects. Notably, the ALJ was required to include only "credibly established" limitations. *Rutherford*, 399 F.3d at 554; *Zirnsak*, 777 F.3d at 615. Accordingly, the ALJ did not err when he did not include in the RFC any limitations arising from side effects from Plaintiff's medications. *See Morris v. Comm'r of Soc. Sec.*, No. CV 18-17531, 2020 WL 529204, at *5 (D.N.J. Jan. 31, 2020) ("Plaintiff does not cite any evidence documenting medication side effects or functional limitations that are not accounted for in her RFC."); *Pucciarello v. Colvin*, No. CV 15-3719, 2016 WL 3912851, at *16–17 (D.N.J. July 19, 2016) ("Plaintiff here has failed to present 'evidence of any functional limitation' related to his alleged drowsiness and clouded mental focus and, therefore, the ALJ's implicit decision to discount these claimed side-effects is supported by substantial evidence.") (citations omitted).

In short, the Court concludes that the ALJ's RFC determination sufficiently complies with the 2016 Court Order, is consistent with the record evidence, and enjoys substantial support in the record.

### C.    Step Five

Plaintiff also challenges the ALJ's determination at step five, arguing that the determination does not comply with the requirements of the 2016 Court Order and that the vocational expert's testimony is inconsistent with the Dictionary of Occupational Titles ("DOT"). *Plaintiff's Moving Brief*, ECF No. 21, pp. 19−26. Plaintiff's arguments are not well taken.

22

"[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work[.]" 20 C.F.R. § 416.960(b)(2). "While 'the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations,' . . . '[w]e do not require an ALJ to submit to the vocational expert every impairment alleged by a claimant.'" *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005)). "[T]o accurately portray a claimant's impairments, the ALJ must include all 'credibly established limitations' in the hypothetical." *Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014) (citing *Rutherford*, 399 F.3d at 554). Credibly established limitations are limitations "that are medically supported and otherwise uncontroverted in the record." *Rutherford*, 399 F.3d at 554. Finally, a "vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the [ALJ's hypothetical] question accurately portrays the claimant's individual physical and mental" limitations. *Podedworny*, 745 F.2d at 218.

"As a general rule, occupational evidence provided by a [vocational expert] should be consistent with the occupational evidence presented in the DOT." *Zirnsak*, 777 F.3d at 617 (citing SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000)). "To ensure consistency, courts have imposed an obligation on ALJs to '[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by [vocational experts] . . . and information in the [DOT].'" *Id*. (quoting SSR 00-4p at *1). "Specifically, an ALJ is required to (1) ask, on the record, whether the [vocational expert's] testimony is consistent with the DOT, (2) 'elicit a reasonable explanation' where an inconsistency does appear, and (3) explain in its decision 'how

the conflict was resolved.'" *Id.* (quoting *Burns*, 312 F.3d at 127). "An ALJ's failure to comply

with these requirements may warrant remand in a particular case[,]" but "the presence of

inconsistencies does not mandate remand, so long as "'substantial evidence exists in other

portions of the record that can form an appropriate basis to support the result.'" *Id.* (quoting

*Rutherford*, 399 F.3d at 557).

Finally, a vocational expert may rely on his or her own experience in addition to the DOT

when determining whether an individual is capable of performing any jobs. *Horodenski v.*

*Comm'r of Soc. Sec.*, 215 F. App'x 183, 189–90 (3d Cir. 2007) (finding the ALJ did not err in

relying on a vocational expert who based his opinion on thirty years of his experience); *Butler v.*

*Colvin*, No. CIV. 13-7488, 2015 WL 570167, at *9 (D.N.J. Feb. 11, 2015) (noting that Judges in

the Third Circuit "have encouraged" vocational experts "to rely on their experiences rather than

solely on the DOT").

Here, the 2016 Court Order remanded this case for a new hearing and, *inter alia*,

additional testimony from a vocational expert. R. 450. The Court further ordered that the "ALJ

shall incorporate the Commissioner's understandings as published in SSR 83-10 regarding the

requirements of unskilled jobs when questioning the vocational expert." *Id.* That Ruling

provides, in pertinent part, as follows:

> Light work. The regulations define light work as lifting no more than 20 pounds at
> a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even
> though the weight lifted in a particular light job may be very little, a job is in this
> category when it requires a good deal of walking or standing--the primary
> difference between sedentary and most light jobs. *A job is also in this category*
> *when it involves sitting most of the time but with some pushing and pulling of arm-*
> *hand or leg-foot controls, which require greater exertion than in sedentary work*;
> e.g., mattress sewing machine operator, motor-grader operator, and road-roller
> operator (skilled and semiskilled jobs in these particular instances). *Relatively few*
> *unskilled light jobs are performed in a seated position.*

"Frequent" means occurring from one-third to two-thirds of the time. *Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.* Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping. Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work. . . .

\*      \*      \*      \*

1. Unskilled work. Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding, and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled work.

SSR 83-10, 1983 WL 31251, at \*5–7 (emphasis added).

At step five, the hypothetical question posed by the ALJ to the vocational expert assumed a claimant with Plaintiff's vocational profile and the RFC for a limited range of light work ultimately found by the ALJ. R. 355. The vocational expert responded that the jobs of sealing machine operator, microfilm mounter, and weld inspector—all jobs identified in the DOT as light—would be appropriate for such an individual. R. 355–56. The ALJ went on to question the vocational expert as follows:

Q All these jobs are light. Could you harmonize the fact that the RFC provides, limited to only four hours of standing and walking in the workplace? How does that jive with these three jobs that you gave?

A Well, these jobs are classified as light in the DOT, Your Honor. The fact of the matter is that, you know, from my experience with the jobs, essentially I know that they're done from a seated position for most of the day. The operator has the opportunity to stand if they wish, but they could be done from a seated position. So that the walking and standing that the person does is really, you know, somewhat limited in these jobs.

25

R. 356. Plaintiff's counsel then questioned the vocational expert at length regarding the duties required in these three jobs, the classification of the jobs as light, and how a claimant who is limited to standing and walking up to four hours a day and sitting up to six hours a day can perform these light jobs. R. 356–66. The vocational expert explained that the sealing machine operator "is using their hands and their feet in rapid succession. That is also classified as . . . light work activity. The individual would be similar to the sewing machine operator, that's seated most of the time, but uses a foot pedal." R. 356–57; *see also* R. 360 (testifying that the sealing machine operator is "primarily seated"). The vocational expert next testified that the duties of microfilm mounter can be done either standing or sitting and is classified as light "because the person . . . does have move about[] and get up periodically to get new reels of film to put into the . . . splicer." R. 357; *see also* R. 360–61 (testifying further that the microfilm mounter sits on a high stool). The vocational expert also explained that the weld inspector would have to pick up between five to fifteen pounds to inspect components, *id.*, and that "when they are actually doing the inspecting they're doing it . . . generally from a seated position. They can stand, but they can do it from a seated position as well." R. 360. The vocational expert also testified that he was familiar with these three jobs and had seen them performed. *Id.* The ALJ relied on the vocational expert's testimony and found that, despite Plaintiff's impairments, he could perform work that exists in significant numbers in the national economy and was therefore not disabled. R. 333–34. Based on this record, this Court concludes that the ALJ complied with the 2016 Court Order and did not err in relying on the vocational expert's testimony when finding that jobs exist in significant numbers in the national economy that Plaintiff could perform consistent with his RFC. R. 333–34, 356–66; *see also Podedworny*, 745 F.2d at 218; *Horodenski*, 215 F. App'x at 189–90; SSR 83-10.

26

Plaintiff, however, argues that the ALJ should have, but did not, resolve a conflict between the vocational expert's testimony that the three identified jobs were consistent with the ability to sit for up to six hours and the DOT's identification of these jobs at the light exertional level. *Plaintiff's Moving Brief*, ECF No. 21, pp. 19–26. Plaintiff specifically argues that the 2016 Court Order "was intended to avoid allowing the Commissioner to satisfy his step 5 burden by producing VE [vocational expert] testimony which identifies light work jobs that don't fit the Commissioner's understanding of light work as adopted" from the DOT "merely because some VE claims that he/she knows the job or has seen it done without standing and walking all day or allows lifting and carrying all day from the seated position." *Id.* at 20–21.

Plaintiff's arguments are not well taken. The 2016 Court Order required the ALJ to include the guidelines in SSR 83-10 when questioning the vocational expert, R. 450, which, as set forth above, is precisely what happened here. R. 355–66. Moreover, to the extent that any of the vocational expert's testimony might be characterized as inconsistent with the DOT, the vocational expert sufficiently resolved any such conflict by explaining the relevant job duties based on his experience and seeing them performed. R. 356–61. While Plaintiff complains that the Commissioner does not meet his burden "merely because some VE claims that he/she knows the job or has seen it done[,]" a vocational expert may rely on his or her own experience when determining whether an individual is capable of performing any jobs and an ALJ does not err when relying on a vocational expert who bases his or her opinion on that experience. *Horodenski*, 215 F. App'x at 189–90; *Butler*, 2015 WL 570167, at *9; *Knight v. Colvin*, No. CV 16-1816, 2018 WL 1400077, at *1 n.1 (W.D. Pa. Mar. 20, 2018) ("The ALJ's reliance on this [vocational expert testimonial] evidence was reasonable, especially in light of the fact that the DOT provides the maximum requirements for occupations as generally performed, not the

requirements for a specific job in a specific setting. A VE can provide more specific information about a specific job, which is precisely what happened here."). Notably, Plaintiff's counsel did not object at the hearing to either the vocational expert's qualifications or to his testimony regarding the three jobs identified in the DOT as requiring light exertion. *See generally* R. 354– 66; *cf. Brown v. Comm'r of Soc. Sec.*, No. CV 19-2110, 2020 WL 1244186, at *5 (E.D. Pa. Mar. 16, 2020) ("Brown's counsel did not object to either the VE's qualifications or to her testimony in this respect. . . . Therefore, the ALJ did not err in relying on the VE's testimony.") (citations omitted). In short, the ALJ reasonably relied on the vocational expert's testimony, which provided substantial support to the ALJ's step five determination.

## V.     CONCLUSION

For all these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  March 12, 2021                                   *s/Norah McCann King*
                                                        NORAH McCANN KING
                                                        UNITED STATES MAGISTRATE JUDGE